LAZARUS TILLENY v. ANTON KNOBLAUCH.

June 28, 1898.

Nos. 11,072—(156).

**Landlord and Tenant—Conveyance to Plaintiff a Mortgage—Forcible Entry and Detainer—Plaintiff not Entitled to Possession—Estoppel.**

After the execution of the lease, the lessors made to plaintiff a warranty deed of the leased land, and gave him an order on the lessee requiring him to pay the rent to plaintiff. The deed was given and received to secure a debt owing by the lessors to plaintiff, and it was intended by the order to apply the rent in payment of the debt. *Held*, plaintiff is not entitled to possession after the lease has terminated, and cannot maintain an action in forcible entry and detainer against the lessee, and the latter may show on the trial of that action that the deed is in fact a mortgage. Neither is the lessee estopped to deny plaintiff's title by the fact that he treated plaintiff as his landlord in an attempt made by such lessee to extend or renew the lease according to its terms, and by tendering to plaintiff subsequent rent claimed to be due under the additional term.

**Same—Renewal of Lease—Valuation by Appraisers—Failure to Give Notice—Equitable Relief in Municipal Court.**

The lease provided that the lessee might have the same renewed at a rent to be fixed by appraisement, by giving written notice to that effect three months before the current term expired; that each party should name an appraiser, and the two should name a third, and that, if either party failed to name one, the other could apply to a district judge to name two, the three to appraise and value the property; the rent per annum to be 5 per cent. of such valuation. By reason of the verbal promise of the lessor to appoint appraisers at any time, the lessee failed to give such notice until it was six days too late to give the same, and thereafter he attempted to carry out said provisions of the lease as to giving such notice and appointing appraisers. *Held*, he did not comply substantially with the terms of the lease in attempting to renew the same for another term, and can only procure such renewal by obtaining affirmative equi-

table relief, which the municipal court of Minneapolis cannot grant; and therefore these facts furnish no defense to an action of forcible entry and detainer in that court.

Appeal by defendant from a judgment of the municipal court of Minneapolis in favor of plaintiff, entered pursuant to a verdict directed by Holt, J., in an action of forcible entry and detainer. Reversed.

*Baxter & Turner* and *Donahue & Meyers*, for appellant.

When it appears that plaintiff is not the owner in fee or the landlord, there is no reason why defendant should not have a right to set up that fact in an action of forcible entry and detainer, notwithstanding the fact that he had treated plaintiff as such under a mistaken state of facts. Steele v. Bond, 28 Minn. 267; Pioneer S. & L. Co. v. Powers, 47 Minn. 269.

The time prescribed by the lease for giving notice of intention to renew was not of the essence of the lease, but a formal matter. Davis v. Smith, 58 N. H. 16; Leeds v. Little, 42 Minn. 414; Estabrook v. Hughes, 8 Neb. 496. By keeping the notice and acquiescing in its service, instead of returning it to defendant and objecting to its not being served in time, plaintiff waived any rights that he might have had against defendant for not having served the notice within the time prescribed. Farson v. Goodale, 8 Allen, 202; Lafferty v. Hawes, 63 Minn. 13; Kramer v. Cook, 7 Gray, 550; House v. Burr, 24 Barb. 525; 28 Am. & Eng. Enc. 535; Fox v. Harding, 7 Cush. 516.

*C. H. Rossman*, for respondent.

The defense that plaintiff is merely a mortgagee is of an equitable nature, and could not be tried in the municipal court. McClane v. White, 5 Minn. 178 (188); Belote v. Morrison, 8 Minn. 62 (87); Williams v. Murphy, 21 Minn. 534; Abbott v. Hanson, 24 N. J. L. 493.

A lease for a given term, with a privilege of an extension for another term if a written notice of intention to continue should be given before the expiration of the first term, is a lease for that term and ends at the end thereof, if the notice is not given as stipulated. Beller v. Robinson, 50 Mich. 264. The requirements as to notice must be strictly complied with. Wood, Land. & T. 676; Bradford

v. Patten, 108 Mass. 153; Thiebaud v. First National, 42 Ind. 212.

As to waiver of the notice, it was necessary for defendant to show not only that he relied on plaintiff's statements but, relying thereon, that he neglected to give the notice required by the lease. Combs v. Cooper, 5 Minn. 200 (254); Whitacre v. Culver, 8 Minn. 103 (133); Pence v. Arbuckle, 22 Minn. 417; Fitzpatrick v. Hanson, 55 Minn. 195; 7 Am. & Eng. Enc. 12; Mowry v. Wood, 12 Wis. 413; Spring Garden v. Evans, 9 Md. 1, 20.

CANTY, J.

On January 1, 1888, several persons by the name of Dean were the owners of the land here in question, and on that day made a written lease of the same to this defendant. By the terms of the lease the land is leased to defendant for five years from that date at the rent of $800 per annum. It is further provided that if he

"Shall desire to continue this lease after the expiration of said term for another term of five years, he shall have the right and privilege so to do in the manner and upon the conditions following, that is to say: he shall, not less than three months before the expiration of said first term, give to [the Deans or their assigns] notice in writing of his or their desire and election to continue this lease for such additional term of five years, and in such notice shall name and appoint a disinterested person * * * as an appraiser on his part, and thereupon [the Deans or their assigns] shall, within one week thereafter, appoint a like person as appraiser on their part, and notify the other party in writing of such appointment, and thereupon the two appraisers so appointed shall have authority to appoint a third appraiser. * * * The three appraisers so chosen shall appraise the said leased premises at its then fair market valuation, * * * and without any further act this lease shall be thereupon extended for a further term of five years upon the same terms and conditions in all things as before, except that the annual rent for such second term shall be such sum as is equal to five per centum of such appraised valuation."

It further provides that subsequent extensions for five-year periods may be had in the same manner "until the full end of 60 years after date of this lease." It was further agreed between the parties that on or before May 1, 1889, defendant should erect upon the premises "a good and substantial three-story building."

He went into possession, and erected such building, which it is admitted is of the value of $8,500. At the end of the first five-year

term he procured an extension for another five-year term, which expired January 1, 1898. In the meantime the Deans, on September 12, 1896, made a warranty deed of the premises to plaintiff, and made to him also an order directed to defendant, requiring him to pay to plaintiff all ground rent thereafter due. Defendant, pursuant thereto, paid the rent to plaintiff from that time to the end of the second five-year term.

This action in forcible entry and detainer was thereafter brought in the municipal court of Minneapolis under the claim that the lease expired January 1, 1898.

Defendant, in his answer, alleged that said deed to plaintiff was intended as a mortgage to secure the payment of the sum of $18,000 owing by the Deans to plaintiff at the time the deed was executed, and at the same time the Deans and plaintiff signed and executed a written defeasance, which recited that the deed was given for that purpose. We will call this the first defense.

It is further alleged in the answer that on July 3, 1897, defendant stated to plaintiff that he (defendant) would want to renew the lease for another period of five years, and that there would have to be a new appraisement, and plaintiff answered

"That that was all right; that he [defendant] could have it, and that there would be no trouble about it; and that this defendant could have it appraised at any time that suited him."

Defendant claims that he relied on this in neglecting to give, three months before the end of the second five-year term, the written notice provided for in the lease. It is further alleged that on October 6, 1897, when it was six days too late to give such notice,

"Defendant again spoke to him [plaintiff] about renewing the lease," and the latter replied "that this defendant had not given him the written notice for renewal and new appraisement as mentioned in said lease."

That thereupon on July 7, 1897, defendant gave written notice of his election to continue the lease for another five-year term to plaintiff; that the latter failed to appoint any appraiser, and defendant, pursuant to other provisions of the lease, applied on notice to a judge of the district for the appointment of two other appraisers;

that the judge appointed the two other appraisers, and the three gave plaintiff due notice pursuant to said lease that they would meet on December 3, 1897, at a place named, and appraise the land; that they did so meet and appraise said land, and valued the same at the sum of $7,000, and that on December 31, 1897, defendant tendered plaintiff the rent in advance for the ensuing three months, as determined by such appraisement. It is further alleged that at different times prior to January 1, 1898, defendant was informed by the Deans that plaintiff was the owner of the property; that defendant so believed, and did not know that plaintiff was not such owner until after that date. We will call this the second defense.

At the close of the trial the court ordered a verdict for plaintiff, and from the judgment entered thereon defendant appeals.

1. On the trial, defendant introduced some evidence tending to prove said first defense. The court rejected other evidence, which also tended to prove it. This is error. If plaintiff is merely a mortgagee, he cannot recover. He contends that the order made by the Deans directing defendant to pay the rent to plaintiff had the effect of putting him in possession. Conceding, without deciding, that this is so, his possession and right to possession terminated when the lease terminated; and, conceding that defendant was, during the time covered by such order, the tenant of plaintiff, still it is well settled that a tenant is not estopped to show that his landlord's title or right to possession has terminated since the making of the lease.

There is nothing in the claim that defendant is estopped because he recognized plaintiff as his landlord in giving the notice of renewal, in demanding that plaintiff appoint an appraiser, and in tendering to plaintiff the rent under the new appraisement. The Deans, having misled defendant, may be estopped from questioning his right to treat with plaintiff, but it does not follow that defendant is estopped from asserting the truth after he has discovered it.

For these errors the judgment must be reversed, and a new trial granted.

2. Defendant offered on the trial to prove the facts alleged in said second defense, and the rulings of the court in rejecting the evidence are assigned as error. In our opinion, the court ruled cor-

rectly in rejecting this evidence. The municipal court has no jurisdiction to grant either plaintiff or defendant affirmative equitable relief, and a counterclaim which requires such relief in order to give the party a standing to assert his rights cannot be entertained by that court. See Norton v. Beckman, 53 Minn. 456, 55 N. W. 603; Petsch v. Biggs, 31 Minn. 392, 18 N. W. 101. If defendant had in all respects followed the terms of the lease in demanding another five-year extension or renewal, he would have had a legal right to another five-year term, and would not have needed any such equitable relief. But he did not thus follow the terms of the lease. He failed to give at least three months before the end of the current five-year period, the notice provided for, and attempted to give it six days too late. The lease is self-acting only when its terms are complied with. Under the ordinary form of lease there is a distinction between a stipulation to renew the lease for an additional term and a stipulation to extend the lease for an additional term. The former requires the making of a new lease; the latter does not. Orton v. Noonan, 27 Wis. 272. Where the lease provides for an extension on a notice, and a verbal notice is intended, such notice will ipso facto extend the lease for an additional term longer than one year, and is not within the statute of frauds. Id.

The lease here in question provides that if defendant "shall desire to continue this lease" for another five-year term, he may do so on complying with certain provisions. It may be conceded that compliance with these provisions could, by a verbal agreement, be waived by the parties if the lease specified all the terms of the leasing which were to be in force during such additional term. But this lease does not specify all of such terms. It does not specify the amount of rent that shall be paid during such additional term. The additional term is longer than one year; and if the parties had, by a verbal agreement, waived compliance with all of said provisions, and fixed the amount of rent for such additional term, by reason of the statute of frauds the verbal agreement fixing the amount of rent could not be proved except for the purpose of specific performance. The same principle applies in the present case. Some of the terms of the leasing for the new five-year period are specified in the lease and some are not; the amount of rent to

73 M.—8

be paid is not specified. Defendant did not comply substantially with the provisions of the lease in proceeding to fix the amount of rent, and he cannot fix it by complying only in part with such provisions. As regards the amount of rent, the lease cannot now be continued by force of its own provisions, and must be renewed by specific performance, or some other affirmative equitable relief which a court of equity will grant in a proper case. See Tscheider v. Biddle, 4 Dill. 55, Fed. Cas. No. 14,210. But such affirmative equitable relief cannot be granted in the municipal court.

The judgment is reversed, and a new trial granted.