The FEDERAL LAND BANK OF
SAINT PAUL, Respondent,

v.

Larry OBERMOLLER, et al.,
Appellants.

No. C4–88–505.

Court of Appeals of Minnesota.

Sept. 6, 1988.
Review Denied Oct. 26, 1988.

**252**

Brian J. Murphy, Quarnstrom, Doering, Pederson, Leary & Murphy, P.A., Marshall, for respondent.

Ronald R. Frauenshuh, Jr., Ortonville, for appellants.

Heard, considered, and decided by NIERENGARTEN, P.J., and FOLEY and SCHUMACHER, JJ.

## OPINION

NIERENGARTEN, Judge.

This is an appeal from a judgment granting the respondent bank's motion for summary judgment in its unlawful detainer action. The appellant property owners contend summary judgment proceedings do not apply in unlawful detainer actions and assert there are genuine issues of fact and valid defenses which preclude summary judgment. We affirm.

## FACTS

Appellants Larry and Connie Obermoller borrowed $399,000 from the respondent Federal Land Bank of Saint Paul (Bank). As security for the loans, the Obermollers executed two mortgages on farmland they owned. The Obermollers defaulted on the mortgages, the Bank began foreclosure proceedings in February 1986, and a foreclosure sale was scheduled for April 23, 1986. The Obermollers requested mandatory debt mediation under Minnesota's Farmer–Lender Mediation Act. Although the Bank assumed the mediation act did not apply and proceeded with the April foreclosure sale, the Bank participated in mediation sessions in June and July 1986. The mediation sessions were unsuccessful and the parties failed to reach an agreement.

In July 1986, this court concluded the Farmer–Lender Mediation Act applied to foreclosure proceedings pending on the effective date of the act. *See Laue v. Production Credit Association of Blooming Prairie,* 390 N.W.2d 823 (Minn.Ct.App. 1986). Consequently, the Bank reinstituted foreclosure proceedings in September 1986 by publishing foreclosure notices. The Obermollers requested the district court to declare the April and November foreclosure sales invalid, alleging the Bank failed to negotiate in good faith and had not given the required notice of mediation rights. The Obermollers also applied for a temporary injunction quashing the November foreclosure sale. The district court's denial of the request for an injunction was affirmed by the court of appeals. *See Obermoller v. Federal Land Bank of Saint Paul,* 409 N.W.2d 229 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Sept. 18, 1987).

On November 12, 1986, the Obermollers initiated a second action claiming that the Bank's foreclosure proceedings were invalid and that the Bank's alleged failure to cooperate in mediation and its publication of the April sale interfered with contracts and their ability to continue farming operations. The Obermollers claimed they did not assert their homestead set-aside rights because they believed the second foreclosure was invalid. The Bank subsequently purchased the Obermollers' property at the November 25, 1986 foreclosure sale. The district court found the Obermollers failed to present any evidence of bad faith by the Bank during mediation and granted the Bank's motion for summary judgment.

The court of appeals again affirmed. This court concluded the Bank's publication of the April 1986 foreclosure sale could not have injured the Obermollers because the Farmer–Lender Mediation Act was not effective until March 22, 1986 and because the Obermollers did not request mediation until April 16, 1986, which was several days after the published notices ceased. *See Obermoller v. Federal Land Bank of St. Paul*, No. CX–87–2085, (unpublished) slip op. at 3 (Minn.Ct.App. May 10, 1988) [available on WESTLAW, 1988 WL 44802], *pet. for rev. denied* (Minn. June 29, 1988). This court also concluded the Obermollers' failure to preserve their homestead rights was "an intentional, strategic decision" which did not give rise to any claim for relief.

The Obermollers did not exercise their right to redeem the property and the one-year redemption period expired on November 25, 1987. Approximately thirty days prior to the expiration of the redemption period, the Bank's attorney sent a letter to the Obermollers' lawyer asking counsel to inform the Obermollers that their right to possess the property ended on November 26, 1987. The Obermollers did not vacate the property.

The Bank instituted an unlawful detainer action on January 22, 1988 when it served a summons and complaint on the Obermollers; it also served a notice of motion and motion for summary judgment on the Obermollers at the same time. The Obermollers' attorney made a "formal demand for a jury trial pursuant to the rules" at a February 5, 1988 hearing. Trial was scheduled for February 10, 1988.

The hearing on the summary judgment motion was held on February 9, 1988. The Obermollers served an amended answer with the Bank and the court at the beginning of the hearing. They also submitted an affidavit from their former attorney and a letter from five state legislators which purportedly indicated the legislature's intent regarding former property owners' right of first refusal under Minn.Stat. § 500.24, subd. 6 (1986). The Bank also submitted various affidavits and doc-

uments in support of its summary judgment motion including certified copies of the mortgages and the affidavits of publication.

The Obermollers' attorney objected to the submission and acceptance of the parties' affidavits, in part because the expedited trial procedures under the unlawful detainer statute conflicted with the notice and filing requirements of the rules of civil procedure governing summary judgment proceedings. The Obermollers' attorney also objected later suggesting the summary judgment motion "wasn't proper," "wasn't served right," and was brought "in violation of the Rules of Civil Procedure." Although the court suggested both parties could agree to continue the trial which was scheduled to begin the next day, neither party would consent to an extension.

The Bank argued that the only issues for determination in unlawful detainer proceedings are whether the facts alleged in the complaint are true, and asserted there were no genuine issues of material fact regarding the Obermollers' right to possess the property. The Obermollers argued they had entered into an oral rental agreement with the Bank which allowed them to retain possession and that the issues of rental agreement and consideration were fact issues for trial. They also asserted the letter from the Bank's attorney advising the Obermollers' lawyer that the Obermollers' redemption period was about to expire was a notice to quit and that they were entitled to retain possession because of the Bank's alleged reprisal motives. The Obermollers claimed the Bank's notice of foreclosure was invalid and asserted they did not exercise their right of homestead designation because the Bank's notice of homestead designation allegedly was "vague and ambiguous" and confusing. Finally, the Obermollers claimed they had an equitable right under state and federal law to remain on the property until the Bank decided to sell the property and afforded them an opportunity to exercise their right of first refusal.

The court found the parties participated in "several mediation sessions pursuant to the Minnesota Farm Mediation Act" and

that the Obermollers were served with notices of mortgage foreclosure sale on September 24, 1986. The court found the notices of mortgage foreclosure sale were published for eight consecutive weeks from September 24 to November 12, 1986, that the foreclosure sale occurred on November 25, 1986, and that the Bank purchased the property. The court also found the Obermollers' interest in the property terminated upon expiration of the redemption period on November 25, 1987. According to the court, the Obermollers were notified "at least thirty days prior to the commencement of this action of the termination of such tenancy" but failed to vacate the property and continued to possess the property. Finally, the court found there were "no genuine issues of material fact before the Court *concerning the action for unlawful detainer.*" (emphasis added). The court concluded:

> [T]he matter is properly before the Court in an action for unlawful detainer; that notices of such action have been properly served upon the [Obermollers]; and that notices therefore, including motions for summary judgment, have been properly served upon the [Obermollers].

The court concluded the Obermollers could not assert counterclaims in an unlawful detainer action and that the Bank was entitled to judgment against the Obermollers "in the form of a writ of restitution of the premises" because the Bank showed "there are no genuine issues of material fact." The court stated that the Obermollers' only denials with respect to the factual validity of the mortgage foreclosure addressed the specific dates of the mediation sessions and the notice of homestead designation. According to the court, the unlawful detainer action only applied to the November 1986 foreclosure sale and the certified copies of the foreclosure sale notices contained the homestead designation notices required by statute.

The court noted the Obermollers submitted an affidavit in support of their argument about an alleged rental agreement, but concluded the affidavits submitted by the Obermollers and the Bank "taken in the light most favorable to the [Obermol-

lers] do not show that an agreement existed" because the alleged agreements did not mention specific amounts or allege any specific agreement was entered into. Finally, the court concluded the Obermollers' assertions about a right of forbearance were not supported by the language of federal and state legislation and questioned whether the forbearance policies affected the Bank's substantive right to possess the property.

The Obermollers appeal from the February 24, 1988 judgment.

## ISSUE

Did the district court err by granting summary judgment in this unlawful detainer action?

## ANALYSIS

In reviewing a summary judgment, the evidence must be viewed in a light most favorable to the nonmoving party and summary judgment may be granted only if

> the movant has clearly sustained his burden of showing that there is no *genuine issue* as to any *material fact* and that [the movant] is entitled to judgment as a matter of law.

*Sauter v. Sauter*, 244 Minn. 482, 484, 70 N.W.2d 351, 353 (1955) (footnote omitted; emphasis in original).

### Unlawful Detainer Actions and Rule 56

The Obermollers contend it was improper for the district court to entertain and grant a summary judgment motion because summary judgment unfairly precluded them from exercising their right to a jury trial under the unlawful detainer statute. *See* Minn.Stat. §§ 566.03, subd. 1, 566.07 (1986). The Obermollers also argue there is a conflict between the rules of civil procedure governing summary judgments and the statutory procedures for unlawful detainer actions because the longer time periods provided in the rules conflict with the provisions in the unlawful detainer statute establishing expedited appearance and trial schedules. We must determine initially

whether, under the circumstances, the district court could have resolved the parties' claims in this unlawful detainer action by summary judgment.

A party in an unlawful detainer action may be required to appear before the court in as few as seven days. *See* Minn.Stat. § 566.05 (1986). The rules of civil procedure provide that a party asserting a claim may move for summary judgment "at any time *after the expiration of 20 days from the commencement of the action* or after service of a motion for summary judgment by the adverse party." Minn.R.Civ.P. 56.-01 (emphasis added). "The motion shall be served *at least 10 days before the time fixed for the hearing.*" Minn.R.Civ.P. 56.-03 (emphasis added).

Although the supreme court has held that a trial judge has power to grant summary judgment under Rule 56.04, *see Niazi v. St. Paul Mercury Insurance Co.*, 265 Minn. 222, 227, 121 N.W.2d 349, 353 (1963), the court has limited it to those occasions

> when there remains no genuine issue as to any material fact and judgment must be ordered for one of the parties as a matter of law. The same conditions must exist as would justify a summary judgment on motion of a party.

*Del Hayes & Sons, Inc. v. Mitchell*, 304 Minn. 275, 280, 230 N.W.2d 588, 591–92 (1975).

The supreme court suggested in *Mitchell* that the trial court's decision to render summary judgment sua sponte was justified by several factors: (1) the dispositive issue was raised at the pretrial conference and incorporated in the court's pretrial order; (2) the defendants were afforded a twenty-day opportunity to prepare to meet the issue; (3) the defendants were allowed an opportunity to make their offer of proof at an in-chambers conference on the day set for trial; (4) the defendants availed themselves of the opportunity by attempting to show genuine issues of fact and were fully heard on all questions; (5) the trial court ruled on the pertinent issues; (6) the defendants did not object on the record to the court's procedure; and (7) the defendants could not show they were prejudiced by the lack of a formal summary judgment motion. *Id.* at 279–80, 230 N.W. 2d at 591.

■ Unless an objecting party can show prejudice from lack of notice or other procedural irregularities, or was not afforded a meaningful opportunity to oppose summary judgment, the court's judicious exercise of its inherent power to grant summary judgment in appropriate cases should not be disturbed. *See id.* at 281, 230 N.W.2d at 592; *Niazi*, 265 Minn. at 227, 121 N.W.2d at 353; *see also* Minn.R.Civ.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

■ The Obermollers were entitled to demand a jury trial under the unlawful detainer statute. *See* Minn.Stat. § 566.07 (1986). However, after reviewing the record we cannot conclude the district court erred by determining the issues in the unlawful detainer action by summary judgment because we can discern no prejudice to the Obermollers resulting from the summary proceedings. The Bank did not comply with the twenty-day provision in Rule 56.01 because it served its summary judgment motion at the same time it served its summons and complaint in the unlawful detainer action. However, since the Bank's summary judgment motion, notice of motion, and supporting memoranda were served on January 22, 1988 and the hearing on the summary judgment motion was not held until February 9, the Bank technically complied with the ten-day notice requirement of Rule 56.03. The record indicates the Obermollers received sufficient notice and were afforded adequate opportunity to argue against the summary judgment and raise issues of material fact for the court's consideration. *See Wikert v. Northern Sand and Gravel, Inc.*, 402 N.W.2d 178, 182 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. May 18, 1987) (the respondent's failure to comply with the ten-day notice requirement of Rule 56.03 did not prejudice the appellant who was given "ample opportunity to argue and attempt to raise genuine issues of fact for the trial court to

consider"). The court conducted a preliminary hearing on the unlawful detainer action on February 5. The Obermollers served their formal answer to the complaint and requested leave to file amended answers at that hearing and the court and the Obermollers' attorney discussed possible fact issues existing for trial. Although the Obermollers objected to the summary judgment proceeding as being improper and previously requested a jury trial, the record indicates they were prepared to argue their case at the hearing on the summary judgment motion which was held the day before the date set for trial. Both parties submitted affidavits and other documents and argued their respective positions at the summary judgment hearing. Although the district court suggested the parties could move for a continuance, neither the Obermollers nor the Bank would consent to an extension of the trial date. Under these circumstances, we do not believe the Obermollers were prejudiced and conclude the district court could address the parties' claims in the unlawful detainer action by summary judgment. *Cf. University Community Properties, Inc. v. Norton,* 311 Minn. 18, 246 N.W.2d 858 (1976) (the parties' claims in unlawful detainer actions were decided by summary judgment).

Having decided the unlawful detainer action could have been decided by summary judgment, we must determine whether the district court properly granted the Bank's motion for summary judgment.

The trial court may grant summary judgment at a pre-trial if there are no material facts in dispute, judgment is proper for one party as a matter of law, and there is no prejudice to the objecting party as a result of the lack of notice. *Wikert,* 402 N.W.2d at 182.

■ There is no dispute that the Obermollers defaulted on the two mortgages held by the Bank, that the Obermollers did not redeem their property within the one-year redemption period, or that the Bank purchased the property at the mortgage foreclosure sale. The record on this appeal as well as the opinions in the two previous appeals in this litigation show mediation sessions did occur and that the Bank participated in those sessions. Certified copies of the published foreclosure sale notices show the notices were published in a timely manner and contained the required statutory language advising the Obermollers of their homestead set-aside rights. We conclude summary judgment was proper.

### Forbearance Policy

As a defense to the unlawful detainer action the Obermollers assert a right of forbearance under federal administrative regulations which require federal land banks to develop and distribute forbearance policies. *See* Farm Credit Amendments Act of 1985, Pub.L. 99–205, § 301(b), 1985 U.S.Code Cong. & Admin.News (99 Stat.), 1678, 1707. The administrative regulations were implemented on October 28, 1986 and require federal land banks to provide copies of their forbearance policies to borrowers "at least 14 days, but not more than 30 days, prior to the commencement of any collection action." *See* 12 C.F.R. § 614.4513(e)(1) (1988).

The district court concluded the Obermollers were precluded from asserting the forbearance policies as a defense because the federal regulations which require notice of forbearance policies *"prior to* the commencement of *any collection action"* were not in effect in September 1986 when the Bank commenced its foreclosure proceedings. The district court also concluded that even if the Obermollers could assert a defense based on the forbearance policy, the Obermollers could not assert that claim in the unlawful detainer action in which right of possession was the only issue.

■ In *Production Credit Association of Worthington v. Van Iperen,* 396 N.W.2d 35 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Jan. 21, 1987), this court stated the forbearance policies required by federal regulations do not establish a state private cause of action and declined "to impose such dutiful or obligatory compliance" because the regulations establish agency policy rather than substantive law. *See id.* at 38; *see also Johansen v. Produc-*

tion Credit Association of Marshall–Ivanhoe, 378 N.W.2d 59, 62 (Minn.Ct.App.1985) ("the Farm Credit Act does not create a private cause of action for those aggrieved by an organization covered under the act"); Spring Water Dairy, Inc. v. Federal Intermediate Credit Bank of St. Paul, 625 F.Supp. 713, 720 (D.Minn.1986) ("plaintiffs cannot assert a private cause of action under the Farm Credit Act or its regulations").

[A]n unlawful detainer action merely determines the right to present possession and does not adjudicate the legal or equitable ownership rights of the parties.

Thomey v. Stewart, 391 N.W.2d 533, 536 (Minn.Ct.App.1986) (citing Dahlberg v. Young, 231 Minn. 60, 42 N.W.2d 570 (1950)). "Unlawful detainer is a civil proceeding, and the only issue for determination is whether the facts alleged in the complaint are true." Minneapolis Community Development Agency v. Smallwood, 379 N.W.2d 554, 555 (Minn.Ct.App. 1985), pet. for rev. denied (Minn. Feb. 19, 1986) (citing Minn.Stat. § 566.15 (1984)).

▪ The Obermollers assert the forbearance policies as an equitable defense and contend they entered into a rental agreement with the Bank which allows them to remain on the farm. The district court concluded the Obermollers could not assert an equitable claim in the unlawful detainer action and expressly found the Obermollers and the Bank did not have an agreement because the record did not contain any evidence proving a rental agreement existed. Even if the Obermollers' claim about the existence of a rental agreement presents triable issues, that claim cannot be asserted in this unlawful detainer action. See Thomey, 391 N.W.2d at 536; cf. Lanzo v. F & D Motor Works, 396 N.W.2d 631 (Minn.Ct. App.1986) (the trial court did not err by failing to consider the appellant's equitable claim that it had an oral right of first refusal to purchase the respondent's property).

### Homestead Designation Claim

▪ The Obermollers contend the designation of homestead set-aside rights in the foreclosure notices were improper, nonexistent, or "negligently confused" them. The record conclusively shows the homestead designation notice was published as required by law.

This court recently concluded the Obermollers lost their homestead set-aside rights when they assumed the second foreclosure sale was invalid and made a deliberate strategic decision not to assert the alleged improper notice as a defense at the time of the foreclosure proceeding. See Obermoller, slip op. at 4. Accordingly, the Obermollers are precluded from asserting a claim based on the alleged defective notice on this appeal.

### Notice to Quit

The Obermollers contend the Bank vindictively instituted foreclosure proceedings as a reprisal and argue they are entitled to assert "retaliation" as a defense under section 566.03.

Subdivision 1. When any person holds over lands or tenements after a sale thereof on an execution or judgment, or on foreclosure of a mortgage, and expiration of the time for redemption, or after termination of contract to convey the same, provided that if the person holding such lands or tenements after the sale, foreclosure, or termination is a tenant, the person has received at least one month's written notice of the termination of tenancy as a result of the sale, foreclosure, or termination; * * * or when any tenant at will holds over after the determination of any such estate by notice to quit; * * * the person entitled to the premises may recover possession thereof in the manner hereinafter provided.

Subd. 2. It shall be a defense to an action for recovery of premises following the alleged termination of a tenancy by notice to quit for the defendant to prove by a fair preponderance of the evidence that:

(1) The alleged termination was intended in whole or part as a penalty for the defendant's good faith attempt to secure or enforce rights under a lease or con-

tract, oral or written, or under the laws of the state, any of its governmental subdivisions, or of the United States; or

(2) The alleged termination was intended in whole or part as a penalty for the defendant's good faith report to a governmental authority of the plaintiff's violation of any health, safety, housing or building codes or ordinances.

Minn.Stat. § 566.03 (1986) (emphasis added).

■ The Obermollers characterize the October 1987 letter from the Bank's attorney as a "notice to quit." However, the letter merely informed the Obermollers' attorney that the Obermollers' redemption period would expire within several days and suggested legal proceedings might be necessary if the Obermollers did not vacate the premises at the end of the redemption period. We do not believe the Obermollers are "tenants" within the meaning of the unlawful detainer statute because they were neither renting nor leasing the property from the Bank, but were former owners remaining on the land during the redemption period. *Cf. Barnes v. Weis Management Co.,* 347 N.W.2d 519 (Minn. Ct.App.1984) (the appellant leased an apartment from the respondents); *Parkin v. Fitzgerald,* 307 Minn. 423, 240 N.W.2d 828 (1976) (tenants and landlords entered into an oral lease creating a month-to-month tenancy in a house); *Olson v. Bowen,* 291 Minn. 546, 192 N.W.2d 188 (1971) (the plaintiff-owners of a mobile home park leased a trailer site to the defendants on an oral month-to-month basis). Absent an established landlord-tenant relationship, the retaliatory eviction statute does not apply to a former owner holding over after a mortgage foreclosure.

## Right of First Refusal

■ The Obermollers assert that state and federal laws giving previous owners a right of first refusal create an implied right to remain on the property until the Bank decides to sell or lease the property and the Obermollers are given an opportunity to exercise their rights. *See* Minn.Stat. § 500.24, subd. 6 (1986); 12 U.S.C.A. § 2219a (West Supp.1988). The Obermollers assert their interpretation of the right of first refusal statutes furthers state and federal legislative policies which seek to keep farmers on their land. The argument is persuasive. However, neither the state nor the federal statute contains any language indicating previous owners should be allowed to remain on the property until the property is sold or leased.[1] Inferring a right to retain possession until the previous owner is afforded an opportunity to exercise its right of first refusal conflicts with the unlawful detainer statute which expressly allows a party to recover possession from persons holding lands after a mortgage foreclosure. Absent specific statutory language establishing a former property owner's right to retain possession, we must conclude the district court correctly ruled the Obermollers may not assert this alleged implied right as a defense in the Bank's unlawful detainer action. *Cf. Lanzo,* 396 N.W.2d at 634 (the appellant could not assert an alleged oral right of first refusal in the unlawful detainer action).

"Unlawful detainer actions only determine present possession, and do not bar future equitable proceedings." *Id.* Accordingly, our determination that the Obermollers may not assert their right of first refusal or other equitable claims in this

---

1. In support of their argument before the district court, the Obermollers submitted a February 8, 1988 letter signed by five state representatives which stated: "In drafting the First Right of Refusal as legislators it was not our intent that lenders would evict the previous owners prior to exercising their rights under the law." The legislators indicated their intent to introduce legislation to "correct this problem." The letter is of little or no value in determining this issue because the statements were not made under oath and are otherwise inadmissible as evidence. *See County of Washington v. A.F.S.C. M.E., Council No. 91,* 262 N.W.2d 163, 167 (Minn.1978) ("affidavits of individual legislators are not competent to impeach the text of the enrolled bill"); *In re State Farm Mutual Automobile Insurance Co.,* 392 N.W.2d 558, 569 (Minn.Ct.App.1986) (legislators' testimony at a contested case hearing about the intent of the legislature when it enacted bills was inadmissible; "Subsequent testimony by individual legislators regarding legislative intent is inadmissible in construing a statute.").

unlawful detainer action does not preclude them from asserting those claims in an appropriate action.

## DECISION

The district court did not err by determining the parties' claims in an unlawful detainer action by summary judgment because the appellants were not prejudiced by the summary proceedings, the record showed there were no genuine issues of material fact, and the respondent was entitled to judgment as a matter of law.

The appellants cannot assert a claim under the Farm Credit Amendments Act because neither the act nor its regulations establish a private cause of action and because equitable claims may not be asserted in an unlawful detainer action.

The appellants are precluded from asserting their homestead designation claim because that claim was raised and decided in a previous appeal.

The appellants may not assert a retaliatory eviction claim in an unlawful detainer action absent evidence of a landlord-tenant relationship.

The appellants may not assert an alleged right to remain on the property until they exercise their right of first refusal. The unlawful detainer statute expressly allows mortgagees to recover possession from persons holding lands after a mortgage foreclosure.

AFFIRMED.